UNITED STATES DISTRICT COURT:
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMANTINA ZENON <br><br> *Plaintiff,* <br><br> v. <br><br> PROPELLE + KONNECT, ALLISON GRODD, MARCUS GRODD, and SHADI MOSCROP, <br><br> *Defendants.* | Civil Action No.: <br> Hon. <br> ECF Case <br><br><br> **COMPLAINT** <br><br><br> TRIAL BY JURY DEMANDED |

Plaintiff Samantina Zenon ("Plaintiff") by and through her attorneys, Sutton Sachs Meyer, PLLC, as and for her Verified Complaint against Propelle + Konnect, Allison Grodd, Marcus Grodd, and Shadi Moscrop, (together, "Individual Defendants," and collectively "Defendants"), hereby alleges the following upon information and belief.

**NATURE OF THE ACTION**

1.      This is an action for race and gender discrimination, hostile work environment, retaliation, and wrongful termination brought under Title VII of the Civil Rights Act, 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

2.      Plaintiff, a highly qualified Black woman with over 11 years of experience in experiential marketing, was hired by Defendants as a Brand Ambassador, a role Defendants repeatedly described as customer engagement, mixology, and brand representation.

3.      After Plaintiff submitted her first timesheet and requested payment for mandatory airport SIDA training, Defendant Marcus Grodd threatened not to pay her unless she altered her hours and began treating Plaintiff with hostility unique among her coworkers.

4.      Plaintiff, alone among ambassadors, was subsequently subjected to constant inquiries about "sales", shifting expectations, refusal of training pay, reassignment denial, heightened scrutiny, and wage suppression.

5.      These expectations contradicted Defendants' hiring materials, interviews, onboarding communications, training instructions, and representations made to all ambassadors.

6.      When Plaintiff complained that she was being discriminated against based on race and gender, Defendants retaliated by removing her from the schedule, demanding she return her badge, refusing reassignments, and effectively terminating her.

7.      Defendants' shifting explanations ("low sales," "budget cuts," "client reduction") contradict contemporaneous communications, staffing decisions, public job postings, and practices for non-Black coworkers.

8.      Plaintiff brings this action to remedy Defendants' unlawful conduct.

**JURISDICTION AND VENUE**

9.      This Court has jurisdiction over Plaintiff's federal claims under Title VII, 42 U.S.C. § 2000e *et seq*., 28 U.S.C. §§ 1331 and 1343.

10.     The Court has supplemental jurisdiction over Plaintiff's related State and City Law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this District under 28 U.S.C. § 1391.

**PROCEDURAL PREREQUISITIES**

12.     Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

13.     Plaintiff received a Notice of Right to Sue from the EEOC, dated September 15, 2025, with respect to her charges of discrimination.

14.    This Action has been commenced within ninety (90) days of receipt of said Notice of Right to Sue.

## PARTIES

15.    Plaintiff Samantina Zenon is a Black woman residing in New York.

16.    Defendant Propelle Konnect, LLC is an experiential marketing company operating in New York and throughout the United States.

17.    Defendants Allison Grodd (President/Founder), Marcus Grodd (Chief Operating Officer), and Shadi Moscrop (Manager/Mixologist Trainer) each exercised supervisory authority over Plaintiff and participated directly in the discriminatory and retaliatory conduct alleged.

## FACTS COMMON TO ALL CAUSES OF ACTION

A.  The Job Posting and Interviews Confirm Role was not a Sales Job

19.    Plaintiff applied through TrustedHerd, a platform used exclusively for brand ambassadors and experiential marketing talent, not for commissioned sales positions. (Ex. A).

20.    Defendants' job posting described the role as Brand Ambassador, Mixologist, Customer Engagement, and Experiential Event Staff (Ex. A).

21.    At no time did the posting describe the role as a sales job, commission-based job, or job requiring sales quotas.

22.    At all times, the job was described as mixology-focused, experiential, and customer-service oriented (Ex. A).

23.    The job was described as involving a club atmosphere, DJ spinning, disco ball, and mixing drinks and providing samples, not sales (Ex. A).

24.    Ms. Moscrop portrayed herself as the "mixologist expert" and described training consistent with experiential marketing.

25.      Defendants' marketing and social media posts consistently promote ambassadors as experience creators, not salespeople (Ex. F).

26.      At no point before hiring did Defendants disclose any sales requirement, sales quota, or performance metric tied to sales.

B.  Plaintiff was Hired to Work Multiple Brands and Attended all Required Trainings

28.      Defendants told Plaintiff she would work across all brands, and that ambassadors are rotated regularly.

29.      Plaintiff attended all trainings for Pernod Ricard portfolio products, including brands she was never assigned to but was required to learn (Ex. D).

30.      Plaintiff was originally scheduled to work Maker's Mark in February, consistent with Defendants' rotation system.

31.      Plaintiff was instead placed on Royal Salute only because Defendants delayed processing her airport badge.

C.  Plaintiff Submitted her First Timesheet, and Discrimination Followed

39.      On January 29, Plaintiff submitted her invoice for hours worked, including mandatory SIDA training, which lasted from approximately 11:00 a.m. to 5:00 p.m. (Ex. G).

40.      Mr. Grodd refused to pay Plaintiff for the full training hours, demanded she reduce them, and threatened nonpayment if she did not alter her timesheet (Ex. G).

41.      Coworkers confirmed they were each paid fully and without dispute for the same training (Ex. G).

42.      This was the first instance in which Plaintiff realized she was being singled out.

D.  Defendants Applied "Sales" Pressure Only to Plaintiff

47.      After the timesheet dispute, Defendants began messaging Plaintiff constantly with inquiries like "Any sales yet?" (Ex. C).

48.    Plaintiff repeatedly told Defendants she was instructed during interviews that the job was **not sales-focused** (Ex. B).

49.    On February 4, Plaintiff asked Ms. Moscrop directly whether she had a quota or sales expectation (Ex. B).

50.    Ms. Moscrop confirmed there was no quota and could not provide any specific target (Ex. C).

51.    Coworkers confirmed in messages that they were never pressured about sales and that a perk of the job was no sales pressure (Ex. C).

52.    One coworker texted: "Perks of the job is we're not pressured to get sales." (Ex. C).

53.    Plaintiff was the only ambassador questioned daily about sales numbers (Ex. B, C).

54.    Defendants also assigned Plaintiff to promote multiple brands simultaneously, unlike any other ambassador (Ex. D).

55.    Plaintiff promoted Chivas Regal Extra 13, Chivas 18, and Royal Salute, yet non-black coworkers promoted one brand at a time (Ex. D).

E.    Defendants Ignored Obvious Structural Barriers and Economic Realities while Pressuring Plaintiff Alone

55.    Plaintiff explained to Defendants that Royal Salute retails near $300, only international travelers can purchase liquor at JFK, bottle inventory and location limit sales, and cheaper brands sell more frequently. (Ex. B).

56.    Defendants acknowledged the pricing issue yet continued to pressure her only (Ex. B).

57.    No written standards, quotas, or metrics existed, and Defendants could produce none (Ex. B).

F.  <u>Client Ended the Activation, but Defendants' Actions Diverged from Normal Practice</u>

62.    Pernod Ricard ended the Polo Miami activation mid-February, affecting all ambassadors.

63.    Defendants routinely reassign ambassadors to new brands when activations end (Ex. G).

64.    Indeed, Plaintiff was originally scheduled to move to Maker's Mark before Defendants delayed her badge (Ex. D).

65.    When the activation ended, Plaintiff's co-workers were re-assigned. Plaintiff requested similar reassignment. (Ex. G).

66.    Instead, Defendants hired new ambassadors who were not black for other brands and events, including liquor, perfume, and cosmetic activations (Ex. F).

67.    Defendants reassigned other employees, including newer workers, while refusing to reassign Plaintiff (Ex. G).

68.    Plaintiff's coworkers agreed it made no sense that she was not reassigned and apologized for how she was being treated.

G.  <u>Plaintiff Engaged in Protected Activity and Defendants Immediately Retaliated</u>

67.    On or about February 26, 2025, Plaintiff formally complained in writing that she believed she was being discriminated against based on race and gender (Ex. G). She was not provided due process, and no corrective plan or alternative pathway was offered.

68.    Plaintiff specifically identified differential treatment, wage suppression, sales pressure unique to her, and lack of quotas (Ex. H).

69.    Shortly after her complaint, Defendants removed her from all future shifts (Ex. G).

70.    Defendants demanded she return her badge, effectively terminating her (Ex. G).

71.    Defendants claimed she "did not respond" to reassignment opportunities, which is contradicted by written messages (Ex. G).

72.    Defendants never returned Plaintiff to the schedule.

73.    At the same time, Defendants continued to hire and schedule new ambassadors. (Ex. G).

74.    The timing between Plaintiff's protected activity and her termination was immediate.

H.  Comparator Evidence Demonstrates an Inference of Discrimination

75.     Plaintiff worked alongside white women, non-Black women, and Asian coworkers (Ex. I).

76.    These co-workers confirmed that they were never pressured about sales, they were paid for SIDA training without dispute, they were not questioned about recaps, and they were reassigned to new brands when activations ended. (Exs. C, G).

77.    Plaintiff alone was denied reassignment despite attending all required trainings and being fully qualified (Ex. D, G).

78.    Plaintiff alone was told she "may need to look elsewhere" if she did not meet unspecified sales expectations (Ex. B).

79.    Plaintiff alone received threats of nonpayment (Ex. G).

80.    Plaintiff alone had her performance constantly questioned (Ex. G).

81.    These disparities are consistent with race and gender discrimination.

I.  Defendants' Explanations are Contradictory, Inconsistent and Revealing of pretext

82.    Defendants claimed low sales, budget cuts, client cancellations, schedule delays, Plaintiff's badge timing, and Plaintiff "not responding" to shifts.

83.    However, contemporaneous documents and communications reveal that open shifts were offered to other non-black employees (Ex. G), new ambassadors were being hired (*Id*.), coworkers were unaffected by "low sales" (Ex. C), Plaintiff responded promptly and professionally to all communications (Ex. B), and Defendants had no written sales expectations (*Id*.).

84.    Defendants' inconsistent rationale is direct evidence of retaliatory and discriminatory pretext.

## FIRST CLAIM
### (Sex Discrimination Against Entity Defendants)
### [42 U.S.C. § 2000e *et seq.*]

85.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in all paragraphs heretofore as if fully set forth herein.

86.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §  2000e *et seq*., for relief based upon the unlawful employment practices of Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's pregnancy, sex, and gender.

87.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq*. by discriminating against Plaintiff because of her pregnancy, sex, and gender.

88.    As a result, Plaintiff has been damaged.

## SECOND CLAIM
### (Race and National Origin Discrimination Against Entity Defendants)
### [42 U.S.C. § 2000e *et seq.*]

89.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in all paragraphs heretofore as if fully set forth herein.

90.      This claim is authorized and instituted pursuant to the provisions of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §  2000e *et seq*., for relief based upon the unlawful

employment practices of Defendants. Plaintiff complains of Defendants' violation of Title VII's

prohibition against discrimination in employment based, in whole or in part, upon an employee's

race and national origin.

91.      Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §

2000e *et seq*. by discriminating against Plaintiff because of her race and national origin.

92.      As a result, Plaintiff has been damaged.

## THIRD CLAIM
### (Retaliation Against Entity Defendants)
### [42 U.S.C. § 2000e-3(a)]

93.      Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in

all paragraphs heretofore as if fully set forth herein.

94.      Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-

3(a) provides it shall be unlawful employment practice for an employer: "(1) to . . . discriminate

against any of his employees . . . because [s]he has opposed any practice made an

unlawful employment practice by this subchapter, or because he has made a charge, testified,

assisted or participated in any manner in an investigation, proceeding, or hearing under this

subchapter.:

95.      Defendants retaliated against Plaintiff as described above.

96.      Defendants baselessly subjected Plaintiff to adverse employment actions

prohibited by this statute.

97.      Defendants had no valid business justification for the retaliatory and abusive

action taken against Plaintiff following her engagement in protected activity.

98.      As a result, Plaintiff has been damaged.

9

## FOURTH CLAIM
### (Race Discrimination)
### [42 U.S.C. § 1981 *et seq*.]

99.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in all paragraphs heretofore as if fully set forth herein.

100.    Defendants intentionally interfered with Plaintiff's right to contract free of race discrimination.

101.    This provision allows for liability for the individual defendants.

102.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer monetary and non-monetary harm.

## FIFTH CLAIM
### (Sex, Pregnancy, Race Discrimination Against All Defendants)
### [Exec Law § 296 et seq.]

103.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in all paragraphs heretofore as if fully set forth herein.

104.    New York Executive Law § 296 prohibits discrimination and harassment based on race, sex (including pregnancy), and national origin

105.    Defendants violated the section cited herein as set forth above.

106.    Defendants intentionally violated Plaintiff's rights with malice or reckless indifference.

107.    As such, Plaintiff has been damaged.

## SIXTH CLAIM
### (Retaliation Against All Defendants)
### [Exec Law § 296(7) *et seq*.]

108.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in all paragraphs heretofore as if fully set forth herein.

109.    New York Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

110.    Defendants violated the section cited herein as set forth above.

111.    Defendants intentionally violated Plaintiff's rights with malice or reckless indifference.

112.    As such, Plaintiff has been damaged.

## SEVENTH CLAIM
### (Discrimination Against All Defendants)
### [N.Y.C. Admin. Code §8-107 *et seq*.]

113.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in all paragraphs heretofore as if fully set forth herein.

114.    The New York City Administrative Code § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

115.    Defendants violated the section cited herein as set forth above.

116.    Defendants intentionally violated Plaintiff's rights with malice or reckless indifference.

117.    As such, Plaintiff has been damaged.

## EIGHTH CLAIM
### (Retaliation Against All Defendants)
### [N.Y.C. Admin. Code §8-107 *et seq.*]

118.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in all paragraphs heretofore as if fully set forth herein.

119.    The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter."

120.    Defendants violated the section cited herein as set forth above.

121.    Defendants intentionally violated Plaintiff's rights with malice or reckless indifference.

122.    As such, Plaintiff has been damaged.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests the entry of judgment against Defendants as follows:

A.      Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, the NYHRL, and the NYCHRL by discriminating against plaintiff on the basis of her sex, race, gender, and national origin;

B.      Awarding Plaintiff damages for all lost wages and benefits resulting from Defendants' unlawful discrimination, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices in an amount to be proven at trial but in any event no less than $1,000,000.00;

C.      Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven at trial but in any event no less than $1,000,000.00;

D.      Awarding Plaintiff punitive damages;

E.      Awarding Plaintiff attorneys' fees, costs disbursements, and expenses incurred in the prosecution of this action; and

F.      Such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

## DEMAND FOR JURY TRIAL

Plaintiff Samantina Zenon hereby demands a trial by jury on all issues so triable against

Defendants.

Dated:          New York, New York
                December 16, 2025

                                        Yours etc.,
                                        **SUTTON SACHS MEYER PLLC**
                                        *Attorneys for Plaintiff*

                                        /s/Ali R. Jaffery, Esq.
                                        Ali R. Jaffery, Esq.
                                        125 Park Ave, 25th Fl.
                                        New York, NY 10017
                                        t. (212) 480-4357
                                        e. Ali@ssm.law
                                        AJ2547

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

ECF Case No.

SAMANTINA ZENON,

       *Plaintiff*,

   v.

PROPELLE + KONNECT, ALLISON GRODD, MARCUS GRODD, and SHADI MOSCROP,

       *Defendants*.

## VERIFIED COMPLAINT

### SUTTON SACHS MEYER PLLC
*Attorneys for Plaintiff*
125 Park Ave, 25th Fl.
New York, NY 10017
e: Ali@ssm.law
t: (212) 480-4357

Pursuant to Fed. R. Civ. P. 11, *et seq*., the undersigned, Ali R. Jaffery, Esq. hereby certifies to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that: (1) this document is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

*By*: /s/ Ali R. Jaffery, Esq.